TERRELL, Justice
(concurring).
Appellant was informed against, tried and convicted of manslaughter which resulted from culpably and negligently operating his automobile. He was sentenced to. fifteen years in the State penitentiary and seeks relief from that judgment by appeal.
The sole point for determination is whether or not the evidence was sufficient to warrant the judgment imposed on him.
Appellant and decedent were friends, they were young, and were interested in stunt automobile driving, in fact they were ambitious to be “daredevil drivers.” It was their habit to meet and practice for this purpose on an abandoned airstrip near Fort Pierce. The runway was approximately 2,500 feet long, 150 to 200 feet wide, and on the day of the fatal accident it was slippery on account of rain. Appellant was driving a late model Buick and deceased was driving a late model Studebaker, each driver was accompanied by a young woman. Immediately preceding the accident appellant entered the runway driving at a rapid speed, zigzagging and swerving from one side of the strip to the other in a southerly direction. Decedent had entered the strip at the opposite end and was proceeding in a northerly direction. About one quarter of a mile from where decedent entered the strip the automobiles collided head on. At the instant of impact decedent was on the extreme right hand side of the runway within five feet of its edge. There is evidence that decedent attempted to bear further to the right in order to avoid the accident but all state witnesses testified that appellant made no attempt to avoid the accident. It is uncontradicted that the way was clear, straight, unobstructed and that some of the witnesses left the runway shortly before the accident because “I did not want it to be me,” appellant was operating his automobile in such a dangerous manner.
Appellant contends that the verdict and judgment of manslaughter was unwarranted by law because he was not operating his automobile on a public highway so it makes no difference that he was on the wrong side of the road, the rules of the road having no application. There is no merit to this contention. F.S. Section 317.26, F.S.A., requires that drivers proceeding in opposite directions pass each other to the right. That is a universal custom in this country. We *795 observe it even though we pass each other afoot on nothing more than a pig trail. I agree with appellant’s contention that excessive speed alone is not sufficient to show •culpable negligence, but there is ample evidence in this record to support the jury’s finding on that part.
It was argued at the bar that appellant and deceased were engaged in the game of ■“chicken”, a game in which the contestants •each get in an automobile, back off at a considerable distance and drive toward each •other at a high and reckless rate of speed. As they approach one another head on, the •driver who first veers to the right to avoid a collision that might result in grievous injury to both and destruction of the automobiles, is tabbed “chicken”. It is true that the Court struck reference to this game early in the trial but it was repeatedly brought into the picture later by appellant and was relied on by him in argument at the bar of this Court, the analogy being that getting killed in a game of “chicken” was not materially different from being killed in a game of football or other contests in which one or more of those engaged might suffer death. From all that transpired neither party considered that striking the reference to “chicken” removed its alleged sinister influence.
I do not subscribe to any such logic. Football is a national sport, in fact it might be said to be international. The President, governors, congressmen, senators, everybody patronizes football. Schools and colleges abandon classes for it, the legislature adjourns for it, many organizations sponsor it and the athletic department of which it is a part is featured by most of the schools and colleges throughout the country. It is true that a player is injured or killed occasionally but nothing like as often as members of families are killed or maimed perambulating about the home in performance of domestic duties. “Chicken” on the other hand is inherently dangerous. This Court has repeatedly held that the automobile is a dangerous instrumentality. When two of them are manned with drivers, back up a considerable distance, drive toward each other head on at rapid speed, more than seventy miles per hour in this case, it is more analogous to dueling, or should I say reversion to gladiatorial combat or some other relic of barbarism long since outlawed. There is no resemblance whatever between “chicken” and football.
Appellant’s own testimony shows that he saw decedent’s car approaching and did not think he had control of it but he continued to the point 'of impact without veering to the right, without regard for the life of deceased or the young women that were in the cars with them. The cars were demolished, one driver was killed and the other occupants were seriously injured. It seems to me that these and other facts detailed here are ample to show that appellant operated his automobile in a dangerous manner, evincing a reckless disregard of human life.
For these reasons I agree to the judgment of affirmance.
HOBSON, J., concurs.